United States District Court
Southern District of Texas
FILED

SEP 1 2 2001

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| PLAYBOY ENTERPRISES, INC. | § | |
| Plaintiff | § | C.A.   M-01-226 |
| | § | |
| VS. | § | PLAINTIFF PLAYBOY |
| | § | ENTERPRISES, INC.'S ORIGINAL |
| | § | COMPLAINT |
| | § | |
| JAVIER SANCHEZ CAMPUZANO, | § | |
| Individually and as agent of | § | |
| GRUPO SIETE S.A., INC., | § | |
| PAUL SIEGEL, Individually and as | § | |
| agent of SPORTS TIME, INC. | § | |
| and on behalf of Group Seven | § | |
| Communications, Inc. | § | |
| Defendants | § | |

---

## PLAINTIFF PLAYBOY ENTERPRISES, INC.'S ORIGINAL COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

Playboy Enterprises, Inc., Plaintiff herein, files its Original Complaint against

Javier Sanchez Campuzano, Individually and as agent of Grupo Siete S.A., Inc. and

Paul Siegel, Individually and as agent of Sports Time, Inc., and on behalf of Group

Seven Communications, Inc., collectively referred to as Defendants.   Plaintiff

Playboy Enterprises, Inc. (Plaintiff PEI) would respectfully show this Court the

following:

CHsPDF - www.fineso.com

# 1.0

# PARTIES

1.01   Plaintiff PEI is an Illinois corporation with its principal place of business in Chicago, Illinois.

1.02   Defendant Javier Sanchez Campuzano, Individually and as agent of Grupo Siete S.A., Inc., is an individual doing business in Mexico, Texas, and the United States.  Defendant Sanchez can be served by certified mail, return receipt requested at World Trade Center Mexico Piso 31 Oficinia 37 Ave de La Naciones No. 1, Col . Napoles C.P. 03810, Mexico and also through his counsel of record, Mr. Michael Pohl, LAW OFFICES OF MICHAEL A. POHL, 1717 St. James Place, Suite 500, Houston, TX 77056 and Mr. Ramon Garcia, Law Office of Ramon Garcia, P.C. 222 West University Drive, Edinburg, TX 78539.

1.03   Defendant Paul Siegel, Individually and as agent of Sports Time, Inc., is an individual believed to be residing in California and doing business in Mexico, Texas, and the United States.  Defendant Siegel is being served through his counsel of record, Mr. Michael Pohl LAW OFFICES OF MICHAEL A. POHL, 1717 St. James Place, Suite 500, Houston, TX 77056 and Mr. Ramon Garcia, Law Office of Ramon Garcia, P.C. 222 West University Drive, Edinburg, TX 78539.

---

## 2.0

## DEFENDANTS HAVE JUDICIALLY ADMITTED THAT
## VENUE IS PROPER IN HIDALGO COUNTY, TEXAS

2.01   This cause of action is properly filed in Hidalgo County, Texas in that

Defendant Javier Sanchez Campuzano, Individually and as agent of Grupo Siete S.A.,

Inc. and Defendant Paul Siegel, Individually and as agent of Sports Time, Inc., have

judicially admitted that "all or a substantial part of the claims and causes of action

accrued in Hidalgo County, Texas" with regard to Editorial Caballero and Grupo

Siete International, Inc.'s cross-claims against PEI.   See Exhibit 1, Editorial

Caballero, S.A. de C.V. and Grupo Siete International, Inc.'s Original Cross-Claim,

filed against PEI in Hidalgo County.   Accordingly,  Plaintiff PEI's claims with regard

to  the  Licensing  Agreement,  Editorial  Caballero's  breach  of  the  Licensing

Agreement,   and  Defendants'  guarantee  of  Editorial  Caballero's  performance

pursuant to the Licensing Agreement are properly filed in Hidalgo County, Texas, as

per Defendants' admission.   See Exhibit 1.[1]

2.02   Defendants Javier Sanchez Campuzano and Paul Siegel, Individually and

as agents of their respective companies, Grupo Siete S.A., Inc. and Sports Time, Inc.,

---

[1]Although Plaintiff PEI has specifically objected to venue in Hidalgo County, Texas in
Cause No. C-762-98-F, PEI's Motion to Dismiss has not been ruled upon by the Court.  Thus,
without waiving its prior venue objections, PEI files this Original Petition in Hidalgo County,
based upon Defendants' judicial admissions.

are the guarantors of Editorial Caballero's performance pursuant to the Licensing Agreement with PEI.

2.03    Editorial Caballero failed to perform under the terms of the Licensing Agreement with PEI; accordingly, Plaintiff PEI seeks direct relief from the guarantors for performance under the Licensing Agreement.

2.04    Accordingly, Plaintiff PEI files this independent lawsuit against the guarantors, Javier Sanchez Campuzano and Paul Siegel, Individually and as agents of their respective companies, Grupo Siete S.A., Inc. and Sports Time, Inc..

## 3.0

## CLAIMS AND CAUSES OF ACTION

Breach of Contract

3.01    Plaintiff PEI files this claim for breach of contract.  Plaintiff PEI and Editorial Caballero entered into a Licensing Agreement in 1996.  Editorial Caballero was to perform pursuant to the terms of the Licensing Agreement for a period of three (3) years beginning January 1997 through December 1999.

3.02   Defendants Javier Sanchez Campuzano and Paul Siegel, Individually and as agents of their respective companies, Grupo Siete S.A., Inc. and Sports Time, Inc. guaranteed the performance of Editorial Caballero, as evidenced by the document attached as Exhibit 2, the Guarantee Agreement.

3.03    Editorial Caballero was in serious default under the Licensing Agreement in January of 1998.   Although Editorial Caballero was given the opportunity to cure the default, it did not.  See Exhibits 3 (Notice of Default) and 4 (Notice of Termination).

3.04   Accordingly, Plaintiff PEI seeks relief directly from the guarantors of Editorial Caballero's performance, Javier Sanchez Campuzano and Paul Siegel, Individually and as agents of their respective companies, Grupo Siete S.A., Inc. and Sports Time, Inc., for all damages and injury caused to Plaintiff PEI by Editorial Caballero's failure to perform and breach of contract.

Fraud, Fraudulent Inducement and Misrepresentation

3.05   Javier Sanchez Campuzano signed the Guarantee Agreement, Exhibit 2, as guarantor of Editorial Caballero's performance pursuant to the Licensing Agreement entered into by Javier Sanchez Campuzano, on behalf of Editorial Caballero, and Robert O'Donnell, on behalf of PEI.

3.06   Javier Sanchez Campuzano has been deposed in Cause No. C-762-98-F, filed in Hidalgo County, Texas, and he testified that Grupo Siete S.A., Inc. does not exist in any form.  As such, Javier Sanchez Campuzano committed fraud against PEI and fraudulently induced PEI into the Licensing Agreement.   Javier Sanchez Campuzano's misrepresentations have caused injury to PEI and he is directly

responsible to PEI with regard to the fraud, fraudulent inducement, and misrepresentations.

3.07    Additionally, Javier Sanchez Campuzano, on behalf of Editorial Caballero, assigned the right to publish the Playboy magazine to Paul Siegel – another violation of the Licensing Agreement.

3.08  Moreover, Paul Siegel committed fraud, fraudulently induced PEI to sign the Licensing Agreement with Editorial Caballero, and made misrepresentations to PEI in that he represented that he would adequately fund the Playboy project with Editorial Caballero. He did not, and his failure to do so caused Editorial Caballero to be in default.

3.09  Plaintiff PEI states that all conditions precedent have been performed or have occurred.

## 4.0

## DAMAGES CAUSED BY DEFENDANTS' ACTS

4.01  Plaintiff PEI has been financially damaged by the Defendants' actions, and this Court has jurisdiction over this dispute. Plaintiff PEI seeks the following damages: actual damages, out-of-pocket and other monetary losses or expenditures of PEI based upon the wrongful conduct of Defendants, all lost profits and lost revenues due to the wrongful conduct of Defendants, reasonable and necessary

attorneys' fees, expenses, and costs of court, prejudgment and postjudgment interest as allowed by law, and all other relief to which PEI is entitled.

## PRAYER FOR RELIEF

Plaintiff PEI prays that Defendants be served, cited to appear and answer herein and that upon final trial of this cause of action, that Plaintiff PEI recover all damages available under the laws of Illinois or Texas, as decided by this Court, from Defendants Javier Sanchez Campuzano , Individually and as agent of Grupo Siete, S.A., Inc. and Paul Siegel, Individually and as agent of Sports Time, Inc..  Plaintiff PEI prays for all relief to which it may be entitled.

PLAINTIFF PEI DEMANDS A TRIAL BY JURY.

Respectfully submitted,

THE ALLISON LAW FIRM
855 East Harrison
Brownsville, Texas   78520
956-541-8338  Telephone
956-541-2535  Telefax

By: _Dana R. Allison_

DANA R. ALLISON
State Bar No. 12235280
Federal ID No. 8043

ATTORNEYS FOR PLAINTIFF PEI

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Plaintiff's Original Petition was served via Certified Mail, Return Receipt requested  and telefaxed to counsel of record pursuant to the Texas Rules of Civil Procedure.

| CMRRR | CMRRR | CMRRR |
|---|---|---|
| Michael A. Pohl | Mr. Ramon Garcia | Mr. Craig S. Smith |
| LAW OFFICES OF MICHAEL A. POHL | LAW OFFICES OF RAMON | Law Office Of Craig S. Smith |
| 1717 St. James Place, Ste 500 | GARCIA, P.C. | 14493, Suite A; PMB 240 |
| Houston, Texas 77056 | 222 West University Drive | Corpus Christi, TX 78418-5940 |
| | Edinburg, Texas 78539 | |

| CMRRR | CMRRR |
|---|---|
| Mr. Joe Chapa | Mr. Donald B. Edwards |
| Yzaguirre & Chapa | SMITH & EDWARDS |
| 6517 N. 10th St. | 500 N. Water., Suite 700 South |
| | Corpus Christi, TX 78471 |

ATTORNEYS FOR JAVIER SANCHEZ CAMPUZANO & PAUL SIEGEL

on this the  12th day of September, 2001.

_Dana R. Allison_

DANA R. ALLISON

Case 7:01-cv-00226  Document 1  Filed on 09/12/01 in TXSD  Page 9 of 24

CAUSE NO. C-762-98-F

| | | |
|---|---|---|
| ALEJANDRO EDUARDO GONGORA | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| VS. | § | HIDALGO COUNTY, TEXAS |
| | § | |
| EDITORIAL CABALLERO, S.A. de C.V., | § | |
| GRUPO SIETE INTERNATIONAL, INC., | § | |
| and PLAYBOY ENTERPRISES, INC., | § | |
| Defendants | § | 332nd JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL CROSS-CLAIM

COME NOW, Defendants/ Cross-Claimants EDITORIAL CABALLERO, S.A. de C.V.

and GRUPO SIETE INTERNATIONAL, INC., complaining of Cross-Defendant PLAYBOY

ENTERPRISES, INC., and file this their Original Cross-Claim, and for cause of action show as

follows:

### I. PARTIES AND JURISDICTION

1. Defendant/Cross-Claimant Editorial Caballero, S.A. de C.V. ("Editorial") is a

corporation organized under the laws of Mexico. Editorial is the publisher and distributor of the

Mexican edition *Playboy Un Estilo de Vida* (the magazine).

2. Defendant/Cross-Claimant Grupo Siete International, Inc. ("Grupo Siete") is a

corporation doing business in Pasadena, California. Grupo Siete is involved in the distribution of

a latin American *Playboy Un Estilo de Vida* magazine into the United States, including

distribution into the State of Texas and South Texas in particular.

3. Cross-Defendant Playboy Enterprises, Inc. ("PEI") is a corporation organized under

the laws of the State of Illinois, and having its principal place of business in Illinois. PEI has

maintained such sufficient and continuous contacts with the State of Texas so as to subject it to

1



EXHIBIT
1

Case 7:01-cv-00226  Document 1  Filed on 09/12/01 in TXSD  Page 10 of 24

the personal jurisdiction of the Courts of Texas. PEI is a foreign corporation that does not maintain a registered agent or principal place of business in Texas. Therefore, PEI may be served with process pursuant to the Texas Long-Arm statute, §17.045 of the Texas Business and Commerce Code, by service upon the Texas Secretary of State. PEI's home office location and registered agent for service is Howard Shapiro, Executive Vice President, Playboy Enterprises, Inc., 680 North Lake Shore Drive, Chicago, Illinois 60511.

4. Both Cross-Plaintiffs and Cross Defendant PEI have been named as Defendants in this action by Plaintiff Gongora, who claims to have suffered damages because of the actions and/or omissions of Defendant as described herein. Jurisdiction of both Plaintiff Gongora's claims, and the cross-claims asserted herein, is proper in this Court because the amount in controversy exceeds the minimum jurisdictional limits of this Court. Venue of Plaintiff's claims and these cross claims is proper pursuant to §15.002 of the Texas Civil Practices & Remedies Code, because all or a substantial part of the claims and causes of action accrued in Hidaigo County, Texas.

## II. STATEMENT OF THE CASE

5. For over a twenty year period, Editorial has maintained the right to publish and distribute a Mexican edition of *Playboy* magazine in Mexico and other countries in Latin America. Cross-Defendant Playboy has benefitted from its license to Editorial for the past twenty years by its receipt of substantial royalties from the sale of Mexican edition *Playboy*. The close relationship between Playboy and Editorial has included periods covered by a written License Agreement, and periods where no written agreement existed between the parties.

6. In mid-1996, Playboy actively solicited Editorial to expand its distribution of its

2

Case 7:01-cv-00226  Document 1  Filed on 09/12/01 in TXSD  Page 11 of 24

Mexican edition *Playboy Un Estilo de Vida* (the magazine), or some similar edition, into the United States, most specifically the heavily Hispanic communities in the Southwestern United States, including the South Texas border region.   Knowing that Editorial lacked the resources to fully initiate such a distribution plan, Playboy solicited the involvement of Grupo Siete, by insisting and representing  that both Grupo Siete and Editorial would have the exclusive and guaranteed right to publish and distribute the magazine into the United States at a profitable volume (not less than 150,000 issues per month), and that Playboy would assist in and not interfere with these parties' efforts. In reliance upon these representations, and in reliance upon the substantial degree of trust and confidence created by a twenty-year relationship with Playboy, Editorial and Grupo Siete expended substantial money to begin the project.  Among other things, Grupo Siete and Editorial (with Playboy's full knowledge and consent) hired and trained many employees, upgraded facilities and technology, began a major marketing and promotional campaign, and developed close relationships with advertisers, distributors, and other third parties.  Editorial and Grupo Siete's business credibility depended upon the success of this venture and in turn the support and/or non-interference of Playboy.  Playboy was to receive a substantial profit by way of royalties for the relationship.

7. Beginning in late 1996, Editorial and Grupo Siete invested the substantial time, finances and resources to the project as described above.  The investments were made upon the clear and unequivocal representations and promises of Playboy representatives, including Bob O'Donnell and other high ranking executives..   Playboy went so far as to formally review and approve the pro forma financial statements for the venture (showing the detrimental financial impact of lower volume distribution by Editorial and Grupo Siete), certain marketing and

3

Case 7:01-cv-00226  Document 1  Filed on 09/12/01 in TXSD  Page 12 of 24

promotional shows, editorial issues, and media packages detailing the venture and guaranteeing to advertisers a "base rate" established by volume of distribution. These media packages, and other representations, were published to the general business community, and Editorial and Grupo Siete's business credibility and reputation hinged on meeting the stated base rates and success.

8. The first edition to be distributed to the U.S. was published in October, 1997. Much to Editorial and Grupo Siete's surprise and shock, Playboy drastically delayed and interfered with the parties' distribution efforts, by limiting the volume of distribution (contrary to Playboy's prior representations), curtailing distribution sites and methods (purportedly out of a fear of "cannibalization" of Playboy's sales of its English editions, an issue never mentioned previously by any Playboy representative), and by actively prohibiting third parties from carrying the Editorial and Grupo Siete edition in stores. In short, Playboy set out to destroy the very project into which it had fraudulently induced Editorial and Grupo Siete. Editorial and Grupo Siete have now learned that the U.S. distribution project was a sham from the beginning, and that key members of Playboy's corporate headquarters, including its founder Hugh Hefner and others, never intended to perform or honor the promises and representations made to Editorial and Grupo Siete, and instead used Editorial and Grupo Siete in a manner to collect any outstanding monies on the separate Latin America license, "test" the edition in Hispanic areas of the U.S., and then seize the market for Playboy's own use and benefit in the event that the project appeared profitable and feasible for Playboy to do in-house. Unfortunately, Playboy had already induced Editorial and Grupo Siete to spend huge sums of money to prepare for the venture, and had caused Editorial and Grupo Siete to put their credibility on the line with others in the industry.

4

9. This cross-claim is brought by Editorial and Grupo Siete against Playboy based upon Playboy's intentional, fraudulent, and negligent conduct, causing huge financial losses and potential economic ruin to Editorial and Grupo Siete. Playboy's wrongful conduct has caused immeasurable harm to third parties in and around the nation, most particularly in border states such as South Texas. Editorial and Grupo Siete, through this lawsuit, seek recovery against Playboy for all damages they have sustained by Playboy's fraud and other wrongful conduct, that is their substantial business losses, lost profits, loss of credibility and profits in other ventures, and other related damages. Editorial and Grupo Siete also seek contribution and/or complete indemnity from Playboy for any and all damages or liabilities to which these parties may have to any third parties from this transaction, including any and all liabilities to Plaintiff Gongora.

## III.  CLAIMS AND CAUSES OF ACTION

**A.     Fraud/ Fraudulent Inducement**

10. Playboy is liable to Editorial and Grupo Siete for its active and intentional fraud against these parties. Playboy and its agents made knowing and intentional material misstatements, all of which were false and all of which were relied upon by Editorial and Grupo Siete to their detriment.   Cross-Plaintiffs have suffered substantial out of pocket and other actual and consequential damages from such fraud. Playboy's fraudulent statements include, among others:

    a)      In late 1996 and repeated occasions thereafter, Playboy representatives Bob O'Donnell, Henry Marks, and others (on information and belief with the approval of Hugh Hefner and others) represented to both Grupo Siete and Editorial that the parties had the absolute right, separate and apart from Editorial's License Agreement with Playboy, to distribute and sell at least 150,000 volumes of the Mexican edition *Playboy Un Estilo de Vida* (the magazine) in the United States of America.

5

Case 7:01-cv-00221  Document 1  Filed on 09/12/01 in TXSD  Page 14/22

b) Playboy representatives Bob O'Donnell and others in late 1996 (with approval from Hugh Hefner and others within Playboy) represented that Playboy would not interfere with, and in fact would provide support for, Grupo Siete and Editorial's distribution efforts in the United States..

c) Playboy representatives reviewed and approved pro forma financial statements for the venture between Grupo Siete and Editorial, and acknowledged a threshold level of distribution necessary for break-even or profitability of the venture. Playboy assured the parties that these volumes would be permitted and guaranteed, despite any terms of the contrary in Editorial's License Agreement.

d) Playboy representatives reviewed, edited, and approved a media kit provided to advertisers throughout the United States and Mexico wherein, among other things, a "base rate" is provided, which is based upon an established volume distribution. Playboy assured the parties that this volume (and more) would be permitted and guaranteed.

e) Playboy brokered the transaction between Grupo Siete and Editorial whereby the parties entered into the venture, and represented to both that the venture would have at least the break-even volume of distribution, and later even more.

f) Playboy represented and warranted that the U.S. distribution venture would not alter or amend Editorial's prior and ongoing right to publish and distribute the Mexican edition in Mexico and South America.

g) Playboy represented that Grupo Siete and Editorial should actively seek advertisers and distributors for the publication, and that Playboy would not interfere with, and in fact would support, these relationships. Playboy reviewed and approved the media kit guaranteeing a base rate based on volume distribution.

h) Playboy represented that distribution of the Mexican edition would occur in established Playboy markets, and never indicated that it would later prohibit such distribution on the basis of "cannibalization" or any other fears or reasons.

i) On information and belief, key members of Playboy's executive department, including Mr. Hugh Hefner himself, expressed to other Playboy executives the desire and intent (from the first day) to mislead Grupo Siete and Editorial into paying past due items, establishing favorable market performance, and then to seize the opportunity in the Hispanic market solely on behalf of Playboy.

11. These statements were material, false when made, were relied upon by Grupo Siete

6

Case 7:01-cv-00226  Document 1  Filed on 09/12/01 in TXSD  Page 15 of 24

and Editorial to their detriment, and were made intentionally and with knowledge of their falsity. As such, Editorial and Grupo Siete are entitled to recover all damages proximately caused thereby, including out of pocket losses, lost profits on this and other ventures, and punitive damages as found by the trier of fact.

**B.     Texas Deceptive Trade Practices Act**

12. Playboy committed actionable violations of the Texas Deceptive Trade Practices Act, §17.42 et. seq., Texas Business and Commerce Code. Playboy's actions as described herein were false and misleading, and constitute one or more actionable violations of certain "laundry list" items under the DTPA, including but not limited to subsections (2), (3), (5), (8), (9), (12), and (23). Playboy's conduct has also impacted parties in the State of Texas, as is claimed by Plaintiff in this case and perhaps others. Moreover, Playboy's actions were unconscionable as to Grupo Siete and Editorial. One or more of the violations of the DTPA by Playboy were committed knowingly. As a result of such violations, Grupo Siete is entitled to recover actual damages and consequential damages as allowed under the Act, reasonable and necessary attorneys' fees and costs, and multiple damages as allowed under the Act and as found by the trier of fact. All conditions precedent to recovery under the DTPA have been met and/or are excused.

**C.     Negligent Misrepresentation**

13. Playboy is liable to Editorial and Grupo Siete for negligent misrepresentation. Playboy, in the course of its business and in a transaction in which it held a pecuniary interest, made numerous misrepresentations of fact as described herein, which were relied on by Editorial and Grupo Siete in the operation of their business. These misrepresentations were false when

7

CItAPDF - www.fasina.com

Case 7:21-cv-00226 Document 1 Filed on 09/13/01 in TXSD Page 16 of 24

made, were made recklessly and/or negligently by Playboy, and were relied upon to the detriment of Cross-Plaintiffs. Cross-Plaintiffs are therefore entitled to the recovery of any and all actual damages and out of pocket losses to which they may be entitled, and to all other recovery to which they may show themselves justly entitled.

**D.    Tortious Interference**

14. Playboy is liable to Editorial and Grupo Siete for intentional interference with existing and prospective business relationships and contracts. Playboy actively prohibited distributors of Editorial and Grupo Siete from carrying the Mexican edition, and on information and belief threatened distributors throughout the United States that if they carried and sold the Mexican edition, their distributorships would be pulled or otherwise hampered. Likewise, Playboy's conduct specifically caused a breach of agreements and contracts with numerous advertisers and other third parties, because Playboy actively prohibited Editorial and Grupo Siete from meeting the established "base rates" represented to advertisers, and in fact caused the parties to cease production at all. Finally, Playboy's conduct has interfered with the relationship between Cross-Plaintiffs and their employees hired directly for this project and in reliance upon Playboy's representations in connection therewith. Playboy's active and intentional interference with these contracts and relationships, and other contracts and relationships with other third parties, was a culmination of Playboy's attempts to steal back the Latin American markets, and has caused not only damages in connection with the Mexican edition, but also in connection with numerous other projects and ventures of Cross-Plaintiffs in the United States and Texas for which their reputation and credibility are critical. As such, Cross-Plaintiffs are entitled to the recovery of all actual and consequential damages caused by such conduct, as well as punitive

Case 7:01-cv-00300 Document 1-3890 on 09/12/01 in TXSD Page 17 of 22

damages as allowed by law and as found by the trier of fact.

### E. Breach of Contract/ Declaratory Judgment

15. Playboy's conduct constitutes a breach of the oral and written agreements it had with Cross-Plaintiffs in this case. Such breaches include the written License Agreement between Editorial and Playboy, and oral contracts and promises regarding U.S. distribution of *Playboy Un Estilo de Vida* (the magazine) made by Playboy representatives and executives. Moreover, Playboy's attempt to unilaterally rescind the License Agreement without cause or justification, especially in light of the parties' many years of service and relationship, is a breach of contract. Playboy's actions over the life of the relationship acted to waive and/or modify the written terms of the agreement to comport to verbal representations and other conduct of the parties, which such terms were then breached by Playboy. As a direct and proximate result of these breaches, Editorial and Group Siete are entitled to the recovery of all actual and consequential damages to which they may be entitled, plus reasonable and necessary attorneys' fees and costs pursuant to §38.001 of the Texas Civil Practices & Remedies Code. All conditions precedent to recovery for breach of contract have been met.

16. Cross-Plaintiffs also seek a declaratory judgment pursuant to Chapter 37, Texas Civil Practice & Remedies Code, finding that the subject contract and the terms therein were wrongfully violated and breached by Playboy, and that the rights recognized therein continue in full force and effect. Moreover, Cross-Plaintiffs are entitled the recovery of reasonable and necessary attorneys' fees and costs under the Act, as the prevailing party. Cross-Plaintiffs seek the imposition of a permanent injunction against Playboy, requiring Playboy to honor the terms of its written and verbal commitments and representations.

9

**F.   Contribution/ Indemnity**

17. Cross-Plaintiffs hereby plead a right of contribution and/or complete indemnity against Playboy as to any liabilities Cross-Plaintiffs may have to any other parties arising out of this transaction, including but not limited to Plaintiff Gongora. Cross-Plaintiffs adopt the claims and causes of action asserted above as grounds for their right of contribution and/or complete indemnity.

## IV. CONCLUSION AND PRAYER FOR RELIEF

18. Defendants/Cross Plaintiffs Editorial and Grupo Siete respectfully request that Cross-Defendant Playboy Enterprises, Inc. be cited to answer and appear herein, and that after trial of this cause, they be entitled to a judgment against Playboy, granting them recovery of the following damages:

a.   Any and all actual damages to which Cross-Plaintiffs may be justly entitled;

b.   Any and all out of pocket or other monetary losses or expenditures of Cross-Plaintiffs based upon the wrongful conduct of Playboy;

c.   Any and all lost profits/ lost business opportunity damages, both with respect to the publication at issue and with respect to other business ventures and relationships;

d.   Reasonable and necessary attorneys' fees and costs of court;

e.   Prejudgment and postjudgment interest as allowed by law;

f.   Punitive and/or multiple damages as allowed at common law and/or under the Texas Deceptive Trade Practices Act;

g.   A declaration in their favor finding the subject agreement and oral commitments and promises binding and in force and effect in favor of Cross-Plaintiffs;

h.   A permanent injunction upholding the subject written and verbal agreements between Playboy and Cross-Plaintiffs;

10

i.    Any and all other relief to which Cross-Plaintiffs may show themselves justly
      entitled.

Respectfully submitted,

LAW OFFICES OF MICHAEL A. POHL

By: _____ (by mas)
    Michael A. Pohl
    TBA# 16086300
    Mark A. Waite
    TBA# 00791865
    1111 Bagby, Suite 2450
    Houston, Texas 77002
    (713) 652-0100 (tel)
    (713) 650-0687 (fax)

    ATTORNEYS FOR EDITORIAL
    AND GROUP SIETE

OF COUNSEL:

RUSSELL STARBIRD, P.C.
Russell Starbird
TBA# 19060250
1111 Bagby, Suite 2450
Houston, Texas 77002
(713) 652-0652 (tel)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing
document has been served on all counsel of record listed below via certified mail, return receipt
requested, on this _18__ day of February, 1998.

11

Mr. Baldemar Cano, Jr.
Attorney at Law
217 South Cage
Pharr, Texas 78577

Mark A. Waite

**12**

September 10, 1996

Playboy Enterprises, Inc.
680 North Lake Shore Drive
Chicago, IL 60611

Dear Sirs:

In order to induce you to enter into a License Agreement (a copy of which is annexed hereto) between yourselves as licensor and Editorial Caballero, S.A. ("Caballero") as licensee, for a Mexican language edition of PLAYBOY Magazine (the "Foreign Edition"), the undersigneds hereby guarantee, without any limitation of any kind, the performance of Caballero of all of the terms and conditions of said License Agreement and, therefore, undertake to be responsible to you, jointly and severally with Caballero for all liabilities of Caballero arising out of its obligations under or in connection with said License Agreement or by reason of any breach thereof; and

This guarantee and agreement shall remain in full force and may be called upon by you without your being required to commence any proceedings of any nature against Caballero.

Very truly yours,

GRUPO SIETE S.A., INC.

By _____

Title _____

Date ___11 / 7 / 96____

SPORTS TIME, INC.

By _____

Title ___Chairman_____

Date ___11/7/96_____

EXHIBIT
2

PLAYBOY ENTERPRISES, INC.

January 23, 1998

**VIA FACSIMILE #011-525-687-7588**
**AND OVERNIGHT MAIL/RETURN RECEIPT REQUESTED**
Mr. Javier Sanchez Campuzano
EDITORIAL CABALLERO, S.A.
Maricopa #57
Col. Napoles C.P. 03810
Mexico, D.F.

RE: __NOTICE OF DEFAULT__

Dear Mr. Campuzano:

This letter is notice that Editorial Caballero, S.A. ("Editorial") is in default under the International Publishing License Agreement with Playboy Enterprises, Inc. ("Playboy") dated as of September 10, 1996 (the "Agreement") for failure to pay: (i) Guaranteed Royalties in the amount of Forty-Nine Thousand Five Hundred Seventy-Nine United States Dollars and Fourteen Cents (U.S.$49,579.14) due as set forth in Paragraph 3.b. of the Agreement and payable as of December 31, 1997; and (ii) rebillables in the amount of Fifty-Five Thousand Eight Hundred Seventy-Seven United States Dollars and Thirty-Two Cents (U.S.$55,877.32) due as set forth in Paragraph 9.a. of the Agreement and payable as of December 31, 1997.

Pursuant to Paragraph 12.a.(ii) of the Agreement, Editorial must remit to Playboy the total past due amounts within five (5) days of the date of this Notice.

In the event Editorial does not completely cure this default, Playboy shall have the option, pursuant to Paragraph 12.b. of the Agreement, to immediately terminate the Agreement. In the event of such termination, all rights granted to Editorial under the Agreement shall immediately cease.

This notice of default is without prejudice to any other rights or remedies Playboy may have under the Agreement or under law.

Sincerely yours,

PLAYBOY ENTERPRISES, INC.

By: _____
Howard Shapiro
Executive Vice President

**EXHIBIT**
**3**

PEI 0042

PLAYBOY ENTERPRISES, INC.

January 29, 1998

*[handwritten: @ 3:13 pm  signed by  H. JIMENEZ  Docs]*

<u>VIA FACSIMILE #011-525-687-7588</u>
<u>AND OVERNIGHT MAIL/RETURN RECEIPT REQUESTED</u>
Mr. Javier Sanchez Campuzano
EDITORIAL CABALLERO, S.A.
Maricopa #59
Col. Napoles C.P. 03810
Mexico, D.F.

RE:    <u>NOTICE OF TERMINATION</u>

Dear Mr. Campuzano:

Reference is made to the Notice of Default of January 23, 1998 (the "Notice"), copy attached.   The International Publishing License Agreement between Editorial Caballero, S.A. ("Editorial") and Playboy Enterprises, Inc. ("Playboy") dated as of September 10, 1996 (the "Agreement") has been terminated as of the close of business on January 28, 1998 (pursuant to Paragraph 12.b. of the Agreement) for Editorial's failure to cure the defaults set forth in the Notice.

There are certain terms and conditions which survive the termination of the Agreement, including, but not limited to, Editorial's obligation to immediately pay to Playboy the amounts due as set forth in the Notice. In addition, pursuant to Paragraph 12.d. of the Agreement, Editorial must immediately pay to Playboy all outstanding Guaranteed Royalties required to be paid during the Full Term of the Agreement, the amount of Three Hundred Fifty Thousand United States Dollars (U.S.$350,000).

Pursuant to Paragraph 12.c., Editorial must submit a Statement, as described in Paragraph 4. of the Agreement, within twenty-one (21) days of the date of this Notice of Termination.  Along with such Statement, Editorial must prepare an accounting as described in Paragraph 12.c. Such Statement and accounting shall be accompanied by payment of any Percentage Royalties which may be reflected as due and payable thereon.

Further, Pursuant to Paragraph 14. of the Agreement, all rights granted to Editorial under the Agreement have now reverted to Playboy, and Editorial must immediately cease publication, distribution and/or sale of the Foreign Edition, Special Issues and Calendars, and make no further use of Playboy's Trademarks or other material.  Editorial must also adhere to the following provisions of Paragraph 14.:

1.     Any rights that Editorial may have acquired to any word, device, design or symbol used by Editorial on or in or developed by Editorial particularly for use with the Foreign Edition, Special Issues or Calendars will be assigned to Playboy, without consideration except as may be required by local law to make such assignment valid.

2.     All copyrights of Editorial in material provided by Playboy, and local language translations thereof, and material obtained by Editorial for use in the Foreign

**EXHIBIT**
4

PEI 0114

Edition, Special Issues and Calendars will be deemed assigned to Playboy, and all licenses from Playboy to Editorial will immediately terminate and Editorial must execute such documents as may be necessary to effectuate such assignments and terminations.

3.    Editorial must immediately cease further printing, publishing, selling or distributing of any copies of the most recent issue of the Foreign Edition, Special Issues or Calendars and will be responsible for immediately recalling from distribution all unsold copies thereof.

4.    All copies of the Foreign Edition that are on-hand or in-process will be destroyed and a certificate evidencing such destruction, signed by the Chief Financial Officer or Corporate Secretary of Editorial will be provided to Playboy.

5.    Editorial must immediately deliver to Playboy all copies of lists of names and addresses of subscribers to the Foreign Edition, advertising contract files, past editorial files, past issues files, all bound volumes and all other files and records related to the Foreign Edition, Special Issues and Calendars (and will retain no copies thereof) and all manuscripts, galleys, transparencies, half-tones and other editorial and graphic material supplied by Playboy or acquired by Editorial for use on or in connection with the Foreign Edition, Special Issues or Calendars.

6.    Editorial must promptly refund to subscribers the pro rata portion of subscription charges applicable to Editorial's unfulfilled subscription obligations, and [either promptly refund any prepaid advertising charges applicable to advertisements not run and pay advertisers an amount equal to any credits earned by advertisers and carried by Editorial as open credits in favor of such advertisers.

Editorial's failure to immediately cease the manufacture, sale or distribution of the Foreign Edition, Special Issues and Calendars and to meet the above requirements will result in damage to Playboy and to the rights of any subsequent licensee for which there is no adequate remedy at law.  In the event of such failure, Playboy shall be entitled to equitable relief as set forth in Paragraph 14.i. of the Agreement.

This Notice of Termination is without prejudice to any other rights or remedies Playboy may have under the Agreement or under law.

Sincerely yours,

PLAYBOY ENTERPRISES, INC.

By: _____
Howard Shapiro
Executive Vice President

PEI 0115